**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| William ERHART, et al., | |
| Plaintiffs, | Civil No. 19-6812 (RBK/AMD) |
| v. | **OPINION** |
| PLASTERERS LOCAL 8 ANNUITY FUND, et al., | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendants' Partial Motion to Dismiss (Docket Item 4). For the reasons expressed in the Opinion below, Defendants' Motion is **GRANTED**.

**I.    BACKGROUND**

Plaintiffs in this case are William Erhart ("Erhart"), Colleen Erhart ("Ms. Erhart"), Thomas Cox ("Cox"), Arthur Crandell ("Crandell"), Jason Derby ("Derby"), Patrick Jones ("Jones"), Charles Parks ("Parks"), John F. Pearcy ("Pearcy"), Mark Riess ("Riess"), Matthew J. Schwegel ("Schwegel"), Cynthia Scipione ("Scipione"), and Thomas Torisi ("Torisi"). Defendants are Plasterers Local 8 Annuity Fund ("the Fund"), the Trustees of the Plasterers Local 8 Annuity Fund ("Trustees"), Joseph Diehl ("Diehl"), and Joseph Moskauski ("Moskauski"). The case stems from Plaintiffs' allegations that Defendants wrongfully denied them employment benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").[1]

---

[1] In the interest of clarity, the Court will make all citations to Title 29 of the United States Code, as opposed to ERISA's sections themselves.

1

Plaintiffs were employed by Jersey Panel Corporation/Baruffi ("Baruffi") during the relevant periods and were participants in the Fund, which is an employee benefit fund and employee pension benefit plan as defined by 29 U.S.C. § 1002(2)(A). (Docket Item 1, ¶¶ 16, 22-23.) Initially, Plaintiffs were represented by Operative Plasterers' and Cement Masons, Local Union No. 8 ("Local 8"). (*Id.* ¶ 24.) Local 8 negotiated a collective bargaining agreement ("CBA") with Baruffi that was renewed every three years. (*Id.*) During this period, the Fund was administered by Benefits Processing Inc. ("BPI"). (*Id.* ¶ 29.) In 2015, Local 8 merged with Cement Masons and Plasterers Union, Local 592 ("Local 592"), which took over as the administrator of the Fund. (*Id.* ¶¶ 25, 29.) Upon the expiration of the existing CBA, Baruffi and Local 592 could not come to a new agreement. (*Id.* ¶ 26.) Instead, Baruffi and Bricklayers and Allied Craftworkers, Local 5 ("BAC Local 5") agreed on a new contract effective June 24, 2016. (*Id.* ¶¶ 26-27.) That contract provides different benefits and requires different contribution levels, as well as being administered by a different plan administrator than the previous CBA. (*Id.* ¶ 27.) Plaintiffs then left Local 8 and became members of BAC Local 5. (*Id.* ¶ 28.)

The Local 8 Fund Plan Document ("Plan Document") states that if no contributions are made for twelve months or more, a participant in the Fund may request a distribution. (*Id.* ¶ 45.) Plaintiffs have not made contributions to the fund for more than twelve months. (*Id.* ¶ 29.) In a letter dated December 29, 2014—prior to both the Local 8-Local 592 merger and the new agreement between Baruffi and BAC Local 5—BPI advised Plaintiff Erhart of the forms he needed to fill out in order to make a claim for benefits. (*Id.* ¶ 30.)

On or about December 20, 2016, Erhart called Defendant Diehl, the administrator of the Fund, and asked Diehl to tell him how to withdraw his Fund balance. (*Id.* ¶ 31.) Erhart also complained about having to pay a $40 administrative fee despite having no activity in the Fund in

more than a year. (*Id.* ¶ 33.) Diehl responded that Erhart could not recoup any of his account balance because Erhart was still in the industry and was represented by one of the Fund's competitors, Local 5. (*Id.* ¶ 32.) Diehl advised Erhart that the only way to get his money back would be by returning to Local 8 (now Local 592). (*Id.* ¶ 32-33.) Finally, Erhart asked Diehl to send him the forms required for requesting a withdrawal. (*Id.* ¶ 31.) Erhart never received those forms, nor the plan documents. (*Id.* ¶ 34.) Thereafter, the remaining Plaintiffs made similar requests to withdraw their money and receive benefits, and they were all informally told that any such requests would be denied. (*Id.* ¶ 35.) They never received plan documents or applications for benefits either. (*Id.*)

As a result of the above circumstances, Plaintiffs filed suit in this Court alleging ERISA violations. (*Id.* ¶ 36.) That suit was dismissed without prejudice on March 12, 2018, for failure to exhaust administrative remedies. *Erhart v. Plasterers Local 8 Annuity Fund*, Civ. No. 17-3016 (RBK/JS), 2018 WL 1251631 (D.N.J. Mar. 12, 2018). Plaintiffs then formally submitted applications for benefits from the Fund, which the Fund denied between June and August 2018. (Docket Item 1, ¶ 37.) Plaintiffs appealed the Fund's denial between August 13 and October 19, 2018. (*Id.* ¶ 38.) The Fund collectively denied the appeals on November 13, 2018. (*Id.* ¶ 39.)

Plaintiffs then filed the present five-count complaint on February 25, 2019. (*See id.* at 18-19.) On April 29, 2019, Defendants filed the present Motion to Dismiss, which seeks to dismiss Counts III, IV, and V. (Docket Item 4.) Plaintiffs responded on June 3, 2019. (Docket Item 6.) Defendants filed a timely reply on June 10, 2019. (Docket Item 7.) The Court will address each Count in turn.

## II.  LEGAL STANDARD

Defendants bring this Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Claims are facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" will not survive a motion to dismiss. *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The district court must "accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [must] construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). The court may only consider the allegations in the complaint and "matters of public record, orders, exhibits attached to the complaint[,] and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

### III.  DISCUSSION

Plaintiffs' Complaint has five counts. Counts I and II seek judicial review of the Fund's and Diehl's decision to deny Plaintiffs benefits. Defendants do not seek to dismiss those Counts in the present Motion to Dismiss. Count III alleges that Defendants, by requiring Plaintiffs to pay

a monthly administrative fee of $40, engaged in prohibited transactions under 29 U.S.C. 1106(a)(1)(D). Count IV alleges that Defendants breached their fiduciary duty to Plaintiffs under 29 U.S.C. § 1109, both by refusing to provide the proper paperwork and by charging Plaintiffs the $40 monthly fee. Finally, Count V alleges that Diehl's actions described above had the purpose of interfering with Plaintiffs' rights as guaranteed under the Fund's terms and ERISA, in violation of 29 U.S.C. § 1140. Defendants argue that Counts III-V should be dismissed for various reasons. The Court will address each Count in turn.

### A. Count III

Count III of Plaintiffs' Complaint alleges a "prohibited transaction." The crux of their argument relies on 29 U.S.C. § 1106(a)(1)(D), which prohibits a plan's (here, the Fund's) fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." A "party in interest" includes "any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of [the] employee benefit plan." 29 U.S.C. § 1002(14)(A). Therefore, Defendant Diehl, as the administrator of the Fund, is a "party in interest." Plaintiffs also allude to Sections 1108(b)(1) and (c), which they claim "make clear that any monies paid to an administrator or for plan expenses must be 'reasonable' to avoid designation as a prohibited transaction."[2] Finally, Plaintiffs cite

---

[2] Section 1108(b)(1) reads:
> The prohibitions provided in section 1106 of this title shall not apply to any of the following transactions:
> (1) Any loans made by the plan to parties in interest who are participants or beneficiaries of the plan if such loans (A) are available to all such participants and beneficiaries on a reasonably equivalent basis, (B) are not made available to highly compensated employees (within the meaning of section 414(q) of title 26) in an amount greater than the amount made available to other employees, (C) are made in accordance with specific provisions regarding such loans set forth in the plan, (D) bear a reasonable rate of interest, and (E) are adequately secured. A loan made by a plan shall not fail to meet the requirements of the preceding sentence by reason of a loan repayment suspension described under section 414(u)(4) of title 26.

Section 1103(c)(1), which prohibits a plan's assets from "inur[ing] to the benefit of any employer" and requires that they "be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." *See also* 29 U.S.C. § 1104(a)(1) (using the same language).

Plaintiffs conclude, based on the above language, that the "withholding of $40 per month by the Fund administrator absent a determination that this amount is needed to defray reasonable expenses constitutes a diversion of Fund assets to a party in interest" in violation of Section 1106(a)(1)(D). (Docket Item 1, ¶ 63.) In their brief in opposition to Defendants' motion to dismiss, however, Plaintiffs focus on the allegation that the $40 monthly fee is "unreasonable on its face," and therefore in violation of Section 1104(a)(1)(A)(ii). In response to this argument, Defendants rightly point out that Plaintiffs have offered no evidence to support that the $40 monthly fee is unreasonable. Instead, Plaintiffs merely recite the statutory language and make conclusory arguments that the fee is unreasonable, with no analysis to support that claim. Plaintiffs' assertions with respect to Count III are nothing more than "[t]hreadbare recitals of the elements of a cause of action, support by mere conclusory statements," which are insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Therefore, the Court will dismiss Count III.

---

Section 1108(c) reads:
> Nothing in section 1106 of this title shall be construed to prohibit any fiduciary from—
> (1) receiving any benefit to which he may be entitled as a participant or beneficiary in the plan, so long as the benefit is computed and paid on a basis which is consistent with the terms of the plan as applied to al other participants and beneficiaries;
> (2) receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan; except that no person so serving who already receives full time pay from an employer or an association of employers, whose employees are participants in the plan, or from an employee organization whose members are participants in such plan shall receive compensation from such plan, except for reimbursement of expenses properly and actually incurred; or
> (3) serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest.

**B. Count IV**

Count IV of Plaintiffs' complaint alleges breach of fiduciary duty by Defendants. Section 1104 sets out the fiduciary duties under ERISA, which include that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and that the "fiduciary shall discharge his with respect to a plan . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1). Violation of these duties are actionable under Section 1109. Co-fiduciaries are liable for the breaches of their co-fiduciaries under Section 1105.

The basis for this allegation is not entirely clear from the Complaint or the parties' briefings with respect to the present motion. However, as best the Court can tell, Plaintiffs are alleging that Defendants did not act "in accordance with the documents and instruments governing the plan," as they were required to do by Section 1104(a)(1)(D). This allegation must be couched in terms of the language of the Plan Document. "In an ERISA action for . . . breach of fiduciary duty, the critical liability questions depend on plan language." *Franco v. Conn. Gen. Life Ins. Co.*, 299 F.R.D. 417, 422 (D.N.J. 2014). "This focus on the written terms of the plan is the linchpin" of enforcing ERISA rights and obligations. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013). "[T]he documents on file with the Plan . . . determine the rights of the parties." *McGowan v. NJR Serv. Corp.*, 423 F.3d 241, 246 (3d Cir. 2005).

Other than definitions, the only provision of the Plan Document that Plaintiffs include in their Complaint is Section 3.5, which reads in part,

> In the event that a Participant has not worked in a job covered by a collective bargaining agreement requiring Employer contributions on his or her behalf to the plan, or, in the event that a Participant who is a Non-Bargained Employee has performed no services for an Employer, for at least twelve (12) consecutive months, he or she shall be considered to have withdrawn from the type of work normally performed by Participants covered by the plan . . . .

(Docket Item 1, ¶ 45.)

In Count IV, Plaintiffs allege that Defendants breached their fiduciary duty by retaliating against Plaintiffs, favoring members of Local 8 by refusing to provide Plaintiffs benefits and disbursements from the Fund, and forcing Plaintiffs to pay the $40 monthly administrative fee. As evidence of this alleged breach, Plaintiffs point to Defendants' initial refusal to provide the application paperwork to Plaintiffs, Defendants' initial denial of benefits based on Plaintiffs' membership in a competitor union, and Defendants' eventual denial of Plaintiffs' application benefits contrary to the plain language of the Plan Document.

Plaintiffs fail to indicate how Defendants' actions contradicted the plain language of the Plan Document. As noted above, the only relevant language that Plaintiffs included in the Complaint discusses the circumstances in which somebody will be deemed to have withdrawn from the Plan. It does nothing to establish that Defendants' behavior contradicted the Plan Document. In other words, as with Count III, because Plaintiffs have merely recited the statutory language here, they have not made sufficient allegations for Count IV to survive the motion to dismiss standard.[3] Therefore, the Court will dismiss Count IV.

## C. Count V

In Count V, Plaintiffs allege that Defendant Diehl interfered with Plaintiffs' protected rights, in violation of Section 1140. That Section reads in relevant part:

---

[3] Defendants put forth two arguments for why this claim should be dismissed, neither of which is convincing. They first argue that this claim is precluded because the same claim was made in the previously dismissed action. But because that action was dismissed without prejudice, *Erhart v. Plasterers Local 8 Annuity Fund*, Civ. No. 17-3016 (RBK/JS), 2018 WL 1251631 (D.N.J. Mar. 12, 2018), claim preclusion does not apply, *see Saudi v. Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 454 (3d Cir. 2004).
    Defendants then turn to the argument that Defendant Diehl's initial denial of Plaintiffs' applications cannot serve as the basis for a breach of fiduciary duty because the Court can only review the final Plan decision with respect to Plaintiffs' applications. In other words, the Court cannot review the propriety of Diehl's decision because it is only the Trustees' decision to uphold Diehl's decision that is reviewable by the Court. Given the above analysis, this argument is irrelevant.

> It shall be unlawful for any person to *discharge*, *fine*, *suspend*, *expel*, *discipline*, or *discriminate against* a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [19 U.S.C. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140 (emphasis added). Of the prohibited actions listed in the above excerpt, Plaintiff only alleges that Diehl discriminated against Plaintiffs on the basis of their union affiliation, both to retaliate against Plaintiffs for terminating their membership in Local 8 and, as the statutory language sets out, "for the purpose of interfering with the attainment of any right to which [Plaintiffs] may become entitled."

Defendants argue that Count V must be dismissed because the Third Circuit has held that an employer-employee relationship is a prerequisite for a successful claim under Section 1140. And in fact, it has: "[T]he term ['discriminate'] should be limited to actions affecting the employer-employee relationship." *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan*, 24 F.3d 1491, 1503 (3d Cir. 1994). All parties agree that no such relationship exists between Diehl and Plaintiffs.

Plaintiffs respond to this argument by relying on a Fifth Circuit case that held an employer-employee relationship is not required to bring a claim under Section 1140. *See Manuel v. Turner Industries Grp., LLC*, 905 F.3d 859 (5th Cir. 2018). Plaintiffs also point out that the Fifth Circuit's rule represents the majority rule among the various circuits. Plaintiffs do not address the Third Circuit authority in their argument.

This Court cannot concern itself with how the majority of circuits have answered this question. The Third Circuit's decision is binding on this Court whether or not it is the majority

rule. Therefore, since no employer-employee relationship exists between Diehl and Plaintiffs, Plaintiffs' claim under 29 U.S.C. § 1140 must be dismissed.[4]

IV. **CONCLUSION**

For the reasons stated herein, Defendants' partial motion to dismiss is **GRANTED**; Counts III, IV, and V of Plaintiffs' complaint are **DISMISSED WITH PREJUDICE**. Within 14 days of the date of today's Opinion, Plaintiffs may file a Motion to Amend that addresses the deficiencies noted above and that complies with Rule 8 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Civil Rules. An accompanying Order shall issue.

November 26, 2019                    s/Robert B. Kugler
Date                                                        ROBERT B. KUGLER
                                                                                   United States District Judge

---

[4] Plaintiffs also argue that, in spite of the requirement that an employer-employee relationship exist, Count V should survive the motion to dismiss. They contend that Diehl "fixate[s]" on the word "discriminate" when in fact Plaintiffs are alleging that Diehl "'interfered' with their attainment of benefits, an action *expressly* stated in (and proscribed by) the statute." (Docket Item 6, at 15 (emphasis in original).) This argument is unavailing. Section 1140 does not expressly prohibit interfering with the attainment of certain benefits. Rather, it prohibits "discharg[ing], fin[ing], suspend[ing], expel[ling], disciplin[ing], or discriminat[ing] against a participant or beneficiary . . . *for the purpose of* interfering with the attainment of any right to which such participant may become entitled." 29 U.S.C. § 1140 (emphasis added). Therefore, interference itself is insufficient to state a claim under Section 1140; it must be accompanied by discharge, fine, suspension, expulsion, discipline, or discrimination. Since Plaintiffs only allege discrimination of those options, and since discrimination requires an employee-employer relationship in this Circuit, Count V must be dismissed.